Here to you, here to you, this honorable appellate court of the 2nd Judicial District is now back in session. The Honorable Susan F. Hutchinson, presiding. Please be seated. Your honor, the second case on the docket is known as 2.22.0266, in the state of Illinois, defendant's appellant, D. Anthony R. Rehbock, defendant's appellant. Arguing on behalf of the appellant, Mr. Adam J. Rodriguez. Arguing on behalf of the appellant, Mr. Jason Jonaski. All right, good morning, counsel, and thank you for your forbearance while we discussed and finished that last one. Then, Mr. Rodriguez, you may proceed. Good morning, and may it please the court. The trial court erred in finding that the defendant had sustained his prima facie burden, showing that his blood test result was inaccurate. In this case, the trial court erred in finding that the defendant had sustained his prima facie burden for rescission of his statutory summary suspension, where the defendant failed to present any evidence whatsoever challenging the accuracy or reliability of the blood test that indicated the defendant's blood tested positive for 5.6 nanograms per milliliter of delta-9-TAGES. Yes, sir. Does the people v. Forth stand for the proposition that if a defendant presents any evidence or any circumstance which tends to cast doubt on the test's accuracy, the defendant's made a prima facie case? No, Your Honor. I think this Court is … I'm quoting the Court. That's what the Court said. Yes, Your Honor. I think that this Court in Stanton clarified that point when it indicated that … and also cited to the Culpepper case of Fourth District dissent, to say that any evidence does not stand for the mechanical rule that whatever evidence, slight or inconclusive, satisfies the prima facie burden showing. So while the Court in North did say that, this Court has understood that to be a more nuanced and concrete than just making an amorphous argument. And this is a summary suspension trial? That's correct, Your Honor. Stanton is different, correct? I believe the posture was different, but I think that argument holds merit in either case, Judge. How so? Well, in the prima facie burden, in the summary suspension context, the State doesn't have a burden at all. It's the defendant who's bringing forward the motion. It's both analysis and the balance of factors have … Okay. You can see that the result could have been under 0.5 nanograms per milliliter, correct? I shouldn't know, Your Honor. I don't think that's correct at all, because in the State's motion to reconsider, they included an offer of proof section. And in that, they quoted Casey Turner, who was the ISB forensic scientist who had performed the test on defendant's blood. And she indicated in part that she would testify to four critical things. One, the defendant's blood did identify delta-9-THC in it. Two, that it was in fact 5.6 nanograms. Three, that that number was actually based on an average of having been tested twice and, fourth, that the first test identified the figure as 5.7 and the second as 5.52. The point, though, my point is that that evidence could have been presented if there was an expert or a lab technician present to testify. But the trial court said to the State, you knew the defendant explained what he was challenging, and the State still answered ready and said, we don't have a lab person here. I'm sorry, go ahead. I guess that takes us to the next issue, which is did the trial court abuse its discretion in denying a motion, denying a continuance? I think it did, Your Honor, because the trial court in this circumstance understood and had even quoted Orr as understanding that the balance of factors favor a liberal granting or a liberal policy of granting continuances when a prima facie burden has been sustained. I'm not accepting nor will I concede the point that the prima facie burden had been sustained, given the totality of the State's argument in our briefs. But for purposes of this argument, at that point, the trial court had sustained the burden. And so the people did request a continuance, and the trial court rejected that for no other reason than the fact that the people weren't clairvoyant enough to apparently know that this situation might not have occurred, which is inconsistent with Orr as well as Culpepper, since they both discuss the liberal policy. If we were to do that, if we were to say the trial court abused its discretion in denying a motion for continuance, the State could have two bites at the apple when they go, no, we're ready, we know the issue that's being raised, but we're ready anyway. What kind of a lesson would that be to the State? So obviously here, it looks like the State probably didn't read the second page or have the full knowledge or understanding of what the defendant was going to be arguing, but they were on notice what the defendant was arguing. Correct? Yes, Your Honor, but to your point as to that, I think the reason why this wasn't abuse of discretion is because the people did indicate that they weren't answering ready in the same sort of all-encompassing way that it appeared the trial court understood that in the context of a criminal trial where the State answers ready, and it is clear based on that that the people are prepared to present and take on that burden of proof to find the defendant guilty beyond a reasonable doubt and present all the evidence and the testimony in regards to that. Here, the people were merely answering ready for the defendant's presentation of his motion to rescind the statutory summary suspension where he has the burden. But even in that point, at page 5 of the record, when the trial court, when the defendant did confirm the basis for rescission, and the court said, State, are you ready to proceed? They stated, quote, I would note, I believe, Judge. Based on everything that's filed, we're still ready on that. There is no lab technician from the ISP lab here, but I don't believe that would be the State's burden at this time. Thus, the record clearly shows that the people answered with a qualification, understanding that if the burden did shift, there was not lab personnel here, so they were going to need a continuance. So as to the issue that Your Honor was asking about notice, I think the trial court was also equally on notice that when the burden shifted, if it did occur in this case, the people representing they don't have people here. They don't have lab personnel, which, first of all, wasn't required, and Orth says that we don't want to have the fiscal and administrative burden of having breath operators and police officers present because that expends resources and that expends time. That argument applies with equal force to this situation, with medical and lab personnel being forced to sit around aimlessly, potentially in the event that the burden shifts. Counsel, I appreciate that, but what about the burden on the courts? I mean, the court has a hearing set, asks the parties if they're ready. They both answer ready. Is that not a burden that we should be considering? So I don't think it is, Your Honor, because the court has inherent authority to continue a summary suspension hearing even after it's been initiated. I think there's case law that speaks very firmly to that point. It only needs to start within the 30-day time frame. It can be continued if the exigencies of the circumstance permit it, which in this case did because the court created the entire circumstance necessitating for people to have a lab personnel come. So it was sort of, you know, the court created the circumstance that we're now dealing with but then foreclosed the resolution. How did the court create the circumstance? The judge asked the state's attorney, are you ready? And the answer is yes. Yes, Your Honor, they did answer ready to proceed on defendant's motion, not that they are prepared in the totality to take on the burden of proof because that's not what the court heard. And isn't that a reasonable assessment of what the state's attorney said? I think, Your Honor. If you're ready for the hearing, you have your witnesses. I believe, you know, there are two factors here. One, the state's attorney maybe didn't read or understand what the marks of error might have meant. And two, based on that assumption, didn't think that they needed to have their witness there and therefore they were going to answer ready and put the other side to their proof, not realizing that they would have to put any evidence on themselves. And when the time came, they were prepared. So as to the issue about the burden of proof, because I think that's critical to kind of the analysis here, the 17.85 uncertainty percentage is not the first point that this court must look at to understand the result. As it indicated in the second paragraph of the lab report, at a 99.73% confidence interval, the lab result would, in the lab, forensic scientists testified or indicated based on the report, that based on that unlevel of certainty, but at a 99% confidence, the result would fall within that range. And it did, based on, as I argued before, the figures were clearly over the 5-point nanogram per milliliter number. So the fact that the trial court honed in on the 17.85% was error because that's not the lens at which you interpret the report, nor does the statute require the trial court to presume uncertainty on its face. It's actually quite the opposite. 11-501.2B-51 states that when a lab report indicates that there is 5 nanograms or more of delta-9-THC, the court presumes that the defendant was under the influence of cannabis. The court in this case rejected that presumption based on this amorphous possibility that the uncertainty percentage somehow mitigated that number further. But that was incorrect to assume without separate evidence, whether that was expert testimony, whether that was learned treatises on the interplay between these numbers, whether it was testimony. But, Mr. Ramirez, isn't this lab report evidence in this case? It is. And can not the court look at the entire document and should not the court look at the entire document to determine what occurred and how the number came to be? It absolutely can, Your Honor. So the report did indicate, as I've argued, that it was over the 5 nanogram per milliliter figure. So that indicated initially to the court, and the law requires a court to presume the defendant was under the influence of cannabis. Okay, but the science here says that there is a certain inaccuracy. And why should that not be considered just as the presumption is considered? And this is a rebuttable presumption because, you know, in the past the State could bring certain witnesses and still could. But maybe the purpose of this second page is to prevent this overburdening on the State or overburdening on the court because it creates an additional piece of evidence that could, in fact, be favorable to the petitioner. So I would say, sure, in theory, Judge, everything you said was absolutely correct. What I would take issue with is that, like this Court is well aware, issues of science, issues of, you know, whether we're talking about here lab testing, whether we're talking about perhaps forensic DNA testing, it deals with probabilities. So that uncertainty percentage that in this case we're dealing with merely indicated that there's a range that the test could result in. But it also represented the confidence interval, saying that the test number was at a 99 percent confidence. And I think you have to interpret these, the test result number in conjunction with those two points. You cannot look at them with such a narrow lens because then you disregard the test number entirely. The test report doesn't, isn't introduced and defendant introduces it. So it, upon its introduction, informs the court that there's a 5.6 nanogram per milliliter identification of Delkline THC. If defendant then wanted to say that number is incorrect, he needs to present separate evidence other than the test itself to contest that accuracy. The evidence, the report, you just acknowledge the report is evidence. And the second page of the report provides that margin of error. And the trial court made a finding that the presumptions should not apply because of what the Supreme Court said in order. Well, if there's any evidence that tends to cast doubt on the test accuracy, that's sufficient to establish a prima facie case. Well, Your Honor, I think both, as this court, you know, kind of more contextualized understand, it cannot be as speculative or as just a theory. And that's really what defendants are looking at. The shift in the burden of proof for purposes of a prima facie case is different than a trial where the fact finder has the jury or the judge, if it's a bench trial, has a lot more leeway in terms of finding a defendant guilty beyond a reasonable doubt and accepting that number. Orville says that if there's any evidence that casts doubt, it's not weighing whether or not the defendant's been proven guilty beyond a reasonable doubt. It's just shifting the burden of proof, which happens, as you know, all the time in motions to suppress. The defendant presents just enough evidence to shift the burden of proof to see whether or not the State can rebut it. And here, the trial court said, I'm not giving you a continuance to bring in your evidence. Sure. And it generally comes down to the abuse of discretion. Because if you apply the numbers, there is a possibility that the defendant could have been under 5 nanograms. I would say if you apply the numbers, there was a range at which the numbers indicated. But even to that point, Your Honor, when the trial court was presented with the motion to reconsider and they were presented with new information they did not have at the time, which rebutted that, it was air for the trial court to reject the motion to reconsider, the motion to continue. Because at that point, to your point, Your Honor, the trial court was presented with new information that actually spoke to that critical issue and analyzed it. And the trial court heard that the ISP lab technician would testify as to the four main points I argued before. And they still rejected that, which I think, based on that, and based on the trial court's representation that in the eight months that it had sat in the DOI courtroom, it had never dealt with a situation like this, I think that actually speaks to the abuse of discretion in this case. Because the trial court had no context, no prior experience from which to rely upon. So they were presented with the arguments on oath, failing liberal granting of continuances when a prima facie agreement has been met. They were presented with new additional facts which contradicted their reasoning, and they still, you know, ruled inconsistent with that, Judge. To borrow a phrase, your argument has some intuitive appeal. But the trial court, we would have to find the trial court abuse of discretion and look at what the trial court is looking at. The defendant, or the State, was put on direct notice of what the defendant was arguing. And what kind of a lesson would it be for State's attorneys and prosecutors that you can come to court unprepared? Well, Your Honor, having been in a DOI courtroom before, I don't interpret this issue as an unpreparedness issue. There was apparently some lack of clarity as to what bases of rescission the defendant was proceeding on. And at that final moment prior to the hearing is when that was clarified. And as I argued, the State did indicate, well, we're still prepared to move on, but it's not our burden. So we would need ISP lab personnel to come, which then would necessitate. That's the inference that you draw from that language, but that's not what the State's attorney said or the assistant said. No, Your Honor. I think she did directly state that she believed it was not her burden and that they didn't have ISP lab personnel present. All right. You'll have an opportunity to reply if you choose. Thank you. Thank you. Mr. Konowski. Justices, good morning. May it please the Court. It is the defendant that believes, position, that the trial court did not err in finding a pre-infection case in this instance. If we're looking at this through the lens of manifest weight standard proof, the opposite conclusion here is clearly not evident from the record. It's not speculative, like some of the other case law would indicate. For example, Stanton had referenced an IV of a mysterious nature before a blood test. That's a little bit more speculative. Culpepper involved defendant's own testimony of purportedly not being under the influence of alcohol and received an unknown injection at the hospital. Here, Judge, I'm sorry, Justices, of course, we have a situation where we didn't have testimony from the defendant petitioner at all. He's not required to testify at the summary suspension hearing. In fact, this lab report was brought in without objection through the arresting officer. He recognized the document. He had obtained that from his master sergeant. He had then filled out the sworn report and sent notice to Mr. Rebok. Here, Judge, it's not, Justices, it's not anything that's speculative in nature or a fraction of proof. It's something substantial. This is a lab report from the state's own materials indicating that there is a level of uncertainty of 17.85%. This is not speculation or conjecture. This is from the state's own evidence. So in one respect, the state wants to say that this is speculative, but then their own materials contradict that. It's credible. I'm sorry. Okay, go ahead. What about the evidence from the officer that the defendant clearly showed signs of impairment? The way he was driving, slowing down, speeding up, when the window was open, there's a strong odor of cannabis. The defendant admits that he had been smoking. Shouldn't that evidence be taken into consideration in how the court looks at that range? Judge, without our Justice, I mean, he's, the defendant's high. Justice, there's somebody else in the vehicle. There is, I believe his name was Diamond, if the record is correct. There's two individuals in that vehicle. They're both smoking. Some odd behaviors. Right. I believe the arresting officer used the term clambake. Right. But then that gets to a question of, you know, whether or not this clambaking caused Mr. Rebox's blood to be above the limit as provided in 11-501-87 and could be subject to a summary suspension. So, Justices, we have credible evidence admitted without objection about the margin of error. As far as some of the other cases that the State cites in their opening brief, the case of People v. Davis from 1989, there's a reference to that where defense counsel had made a comment in this closing argument as to industry tolerance for some range in a breath test. Here, Justices, I would submit that the present case is different than that, where the Davis case was sort of an off-the-cuff remark during closing, where here we have the State's own admission from the crime lab that we are confident the result will fall in this range. It just so happens that this range happens to be under the legal limit where Mr. Rebox would not be subject to a summary suspension at all. All right. Mr. Konosky, in the initial discussion between the Court and Mr. Jurassic and yourself, the Court asks the question, is everybody ready? And the prosecutor says, on the petition that's filed, yes. The Court, defense ready, yes. If I could ask what grounds counsel's going on? And you respond in, I happen to count long sentences, about 100-plus words, one sentence. Where does it say in that response that you have tendered or that you made to the Court that we're looking at the reliability or the vulnerability of the initial finding? Well, Justice, it would certainly not be reasonable grounds because that's two words and that would have been easy for me to say and would have made your reading much shorter. I would submit that it would be the second portion as to the relation for whether or not the test result showed that Mr. Rebox was over the legal limit or not. But I don't see it. That's my problem. So what about the language from the State's attorney here? It says there's no lab tech here, but I don't believe that would be the State's burden at this time. Isn't that a statement to the judge that we're willing to proceed on the defense case, we'll see if they meet their burden, and if we do, we're going to be asking for another date? Justice, I think in that sort of a situation, the prosecutor should have been a bit more clear as to what may be required there. I'm just saying that, well, we don't have a witness or we don't have a lab person here. I think shows some acknowledgment that there's going to be an issue made of the test results, but still deciding to answer ready and proceed to hearing regardless. Even in the hearing on the State's motion to reconsider, the State conceded in the record, page 78, yes, we answered ready, yes, we knew the grounds we were proceeding on. So, I mean, at that point, I think they're well aware of what happened. The trial judge had also submitted to the prosecutor in one of the trial court's rulings that no mention was made of having somebody possibly appear on Zoom. And for your, Justice's knowledge, if they're talking about bringing in someone from Rush-Copley, Yorkville, well, the Rush-Copley, Yorkville is a half mile away from the courthouse. So, what about the gamesmanship aspect here to the extent that our case law has allowed for defense motions to continue, even multiple, involving your firm, we've had recent cases where the officer shows up for the hearing, the defense moves to continue, sometimes multiple times. The officer may show up three, four times, and then ultimately you would take a dismissal and then refile. Our case law has allowed some of that. Why isn't the State entitled to any deference in terms of the burden that is placed on them to have people sitting there who are on the State dime twiddling their thumbs in these cases, where sometimes there are multiple continuances, they've had to appear multiple times? Justice, as far as how it seems to work in Kendall County, one aspect of this is that what happens is you have a first court date, and the trial judge mentions this as well in one of her rulings. You have a first court date, and then the State's attorney simply sets a notice of hearing, and that will typically be from our practice in the afternoon at about 1 o'clock and say that's your hearing. It's based on the officer availability usually? Yes. Not the lab? It can be. I can't really speak to the availability of the lab, the ISP lab personnel in this case. I can note for your honors that in the State's motion to reconsider, that the cellular suspension hearing was held on April 5th, and this conversation with this Illinois State police lab tech did not happen until April 6th. So that seems to be a situation of looking for another bite at the apple. I don't know, I can't say why the State answered ready, and they did, but the fact of the matter is that they did. Had the court granted the motion to continue and the State called the technician, according to the offer of proof, she would have testified that if the same analysis were performed using the same samples being tested in the same laboratory, she's 99.73% certain that the range of THC would still be between a range of 4.6 nanograms per milliliter and 6.6 nanograms per milliliter. So it's a position that was still cast doubt on the result. That still would, Judge. I don't believe that that would rebut the presumption, and even if the trial court had granted the State a continuance there, I would submit that that in itself may not have been an abuse of discretion, but that's not what happened here. The trial court, you know, the State answered ready, and we proceeded in hearing, and simply the State didn't put forth any evidence. They didn't even elect to recall the arresting officer to go back to other points, Justice Burkett, that you had made about Mr. Rebot's alleged appearance in the vehicle. Well, the arresting officer, I think, said, when initially asked, well, I don't look at that page. I just look at the first page, and I really don't understand that, or I don't know that. So I don't know that calling the officer really would have helped. Possibly, Justice. My concern would be that if they chose not to recall the officer in any way to elicit further testimony, there was some brief mention of the collection of the sample, but the fact of the matter is that the evidence here cannot be looked at in a vacuum. I mean, you have the result. So say if you were going to a criminal trial, for way of example, you see that result, and that's over the line. But then you read page two, and you say, well, wait a minute. Something is off here, and something fairly substantial. I think under Orth and the respective case law that that was all that was needed to be shown, and it was not the trial court's abusive – it was not against the manifest weight of the evidence for the trial courts to find the prima facie case had been met, and it was not an abusive discretion to deny the continuance for all those reasons and ask that you affirm the trial court's ruling in this matter. And I am all finished, unless if there are other questions. Okay. Justice Kennedy? I don't have any either. Thank you very much, sir. Thank you. Mr. Rodriguez, you may respond if you choose to. Your Honors, I'd like to address the defendant's argument regarding that the opposite conclusion was clearly not evident from the record under the manifest weight standard. That's incorrect. Under Davis, this Court stated that the assumption in that case that the breadth result was incorrect based on the industrial tolerance, which was the argument the defendant made, the industrial tolerance of that specific breathalyzer machine was .01. Therefore, it would impact the result of .10, thus being under the legal limit. The Court said that the trial court's financing issue was against the manifest weight of the evidence because the opposite conclusion was clearly evident in the record, that that .01 wasn't underreporting, and that the defendant's breadth sample in that case would have been over 1.10. As this Court indicated in rejecting that argument, Davis, it said that you would have to understand the industrial tolerance figure as both a plus and minus. And the error in this case is that the trial court only interpreted the uncertainty percentage and the negative when it clearly stated within the paragraph that we're speaking of that the uncertainty percentage was plus slash minus. So it was clearly evident from that report, even looking at that, that it may have, in fact, been higher. And so Davis says you cannot assume that a figure is diminished by the industrial tolerance, or in this case the uncertainty percentage, because the opposite conclusion is clearly evident from the record that that may have been an overreporting. Our Supreme Court, M. Grelwani, also said that the trial court is finding that the defendant sustained his prima facie burden was against a manifest way to the evidence, where in that case all the defendant presented was merely his own argument, making an inference that perhaps there had been a diminishing of, I believe it was, in that case it dealt with a parking lot and where he was positioned relative to that, and an inference that, therefore, it would have been a private road and not a public road. That's a slightly different factual pattern. But in the same situation, the court in Grelwani said that the opposite conclusion was clearly evident from the record. Therefore, it wouldn't have been enough to sustain the defendant's prima facie burden. So I would assert that looking at how this court analyzed the issue in Davis and looking at how our Supreme Court analyzed this issue in Grelwani, it cuts against the defendant's argument. It does involve an unsupported claim, though, correct, about the apparatus? Yes, Your Honor. Here, we're using the report. The trial court looked at the report. The defendant's argument was that you can't say that the presumption should apply because it's possible that the result was under .5. So in Davis, Your Honor, to address your question, the court said when dealing with kind of the same hypothetical argument that the industrial townhouse may have had an impact, the court said you would need to have expert witness testimony come in. And so that's the exact same argument that we're making here. But it's not what we have here. Here, we have a report from the State Crime Lab that's in evidence. It's in evidence. And, in fact, the motion to reconsider states that the testimony would be the same. It was as low as .46 or 4.6? Yes, Your Honor. The testimony based on the offer of proof would be that if performed the exact same way, the test result would still be within that range. I would assert that the testimony and everything that was indicated would still represent that the test was above the 5.0 nanogram per milliliter based on the totality of everything that was represented. So if the court, the trial court, had any concerns or there was an ambiguity as to how to interpret that issue, you would have to have an expert come in. That is the only way you're going to explain that. The expert would have come in. The lab technician would have still testified. It was 99.73% certain that the range of THC would still be between the range of 4.6 nanograms per milliliter and 6.6 nanograms per milliliter. Correct. And that the result of the test was 5.6 nanograms of delta-9-THC in the defendant's blood. Right. Well, those are the results. One was 5.6 and one was 5.2. There were two tests performed. Yes. So there was an average of the two. But I think that actually, you know, undercuts the defendant's argument because you don't have a situation here where the uncertainty percentage had a wide disparity where, oh, no, we're unclear on how to interpret this. The offer of proof actually represented that in both tests that were done, the figure identified was over 5.6 or over 5 grams, so 5.0 grams, excuse me. So that, once the trial court learned that information that was presented before, I think that undercuts an argument that somehow there was an uncertainty and that that needed to, or that was sufficient in and of itself. Does the Court have any other questions for me at this time? No. Thank you. Thank you, Your Honors. I would just briefly conclude for the reasons stated. In my briefs, as well as those argued today, the people request you find the trial court's decision reversing the defendant's statutory summary suspension was incorrect, and you reverse that and remand it for further proceedings. Thank you. Thank you very much. Thank you. All right. Thank you, gentlemen, for your arguments in this matter. The matter will be taken under advisement, and we will recess and prepare for our last.